UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-10012-CR-ALTMAN

UNITED STATES OF AMERICA,

v.

**JUSTIN MEYER**,

    *Defendant.*

_____/

## **ORDER**

Although the Supreme Court has repeatedly and consistently said that "nothing in our [recent Second Amendment jurisprudence] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons,"[1] our Defendant—Justin Meyer—contends that, without ever mentioning felons, the Court's latest decision[2] rendered all long-standing prohibitions on the possession of firearms by convicted felons unconstitutional. *See* Motion to Dismiss [ECF No. 10] at 1.[3] That may be where the Court is headed—though, as we'll explain below, we have doubts about that, too. In any event, as a lower court, we don't have the luxury of ignoring the Court's consistent (and unambiguous) pronouncements on the continued viability of the federal felon-in-possession statute. We therefore join *all* our colleagues around the country and **DENY** the Defendant's Motion

---

[1] *Dist. of Columbia v. Heller*, 554 U.S. 570, 626 (2008).
[2] *N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022).
[3] The Motion to Dismiss is fully briefed and ripe for adjudication. *See* Government's Response [ECF No. 11]; Meyer's Reply [ECF No. 13]. We could've stricken Meyer's Reply—which, at 33 pages, exceeds our page limit three times over. We decided not to strike it, though, because none of the arguments Meyer advances in that Reply alter the outcome of this case. We've also considered the parties' supplemental briefing. *See* the Government's Notice of Supplemental Authority [ECF No. 29]; Meyer's Response to the Government's Supplemental Authority [ECF No. 31]; Meyer's Notices of Supplemental Authority [ECF Nos. 38, 40]; Government's Responses to Meyer's Supplemental Authorities [ECF Nos. 41, 42]; Meyer's Replies in Support of His Supplemental Authorities [ECF Nos. 44, 45]; Government's Notice of Supplemental Authority [ECF No. 43]; Meyer's Response to the Government's Supplemental Authority [ECF No. 46].

to Dismiss.

## THE MOTION

In 2013, Justin Meyer pled guilty to a state charge of grand theft—the result of his decision to steal an unattended cellphone from a college locker room. *See* Motion to Dismiss at 1. Meyer doesn't dispute that, because of this conviction, he is (and knows himself to be) a convicted felon. *See generally* Motion to Dismiss. Alleging that, despite this prior conviction, Meyer knowingly possessed two different firearms in and affecting interstate and foreign commerce, a federal grand jury in this District returned a two-count indictment, charging him with two violations of 18 U.S.C. § 922(g)(1). *See* Indictment [ECF No. 1].

In his Motion to Dismiss, Meyer advances two arguments. *First*, he says that "§ 922(g)(1) cannot survive *Bruen*'s exacting Second Amendment analysis since the right to 'keep and bear arms' indisputably includes the right to possess a handgun – the precise conduct Mr. Meyer is charged with engaging in here." Motion to Dismiss at 5. *Second*, Meyer contends that, even if the statute survives his facial challenge, we "would still have to find that it is unconstitutional as applied to Mr. Meyer whose single prior conviction was nonviolent." *Id.* at 20. We reject both arguments.

## ANALYSIS

As we've said, over the last fifteen years, the Supreme Court has repeatedly explained that "nothing in our opinion[s] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Heller*, 554 U.S. at 626; *see also id.* at 635 ("*Assuming that Heller is not disqualified from the exercise of Second Amendment rights*, the District must permit him to register his handgun and must issue him a license to carry it in the home." (emphasis added)); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and

government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' We repeat those assurances here." (cleaned up)).

Faithfully applying these pronouncements, the Eleventh Circuit has expressly upheld the constitutionality of the federal felon-in-possession statute (§ 922(g)(1))—reasoning that, "[w]hile felons do not forfeit their constitutional rights upon being convicted, their status as felons substantially affects the level of protection those rights are accorded." *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010). "The [Supreme] Court made this clear," our Circuit continued, "when it referred to those '*disqualified* from the exercise of Second Amendment rights.'" *Ibid.* (quoting *Heller*, 554 U.S. at 635 (emphasis added)); *see also United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022) (upholding § 922(g)(5)(A)'s prohibition against the possession of firearms by illegal aliens and noting that, "as both the Supreme Court and this Court have observed, even individuals who are indisputably part of 'the people,' such as dangerous felons and those suffering from mental illness, might not partake of that pre-existing right [to keep and bear arms] and, therefore, may be prohibited from possessing firearms without offending the Second Amendment").

Meyer disputes *Rozier*'s viability given that, "[i]n *Rozier*, the Eleventh Circuit relied exclusively on *Heller*'s dicta about 'longstanding prohibitions on the possession of firearms by felons[.]'" Reply at 16 (citation omitted). And that's true: *Rozier* did rely on *dicta* from *Heller*. *See Rozier*, 598 F.3d at 771 ("*Heller* stated that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . . This language suggests that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment.'" (cleaned up)). But, "[u]nder our [Circuit's] prior-panel-precedent rule, an earlier panel's holding is controlling unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." *United States v. Files*, 63 F.4th 920, 923 (11th Cir. 2023) (cleaned up). And *Bruen* didn't overrule this aspect of *Heller*; in fact, it never mentioned this sentence from

*Heller* at all. *Cf. United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point." (quoting *Garrett v. Univ. of Ala. at Birmingham Bd. of Tr.*, 344 F.3d 1288, 1292 (11th Cir. 2003))).

Nor can we say that *Bruen* abrogated this portion of *Heller*. Indeed, three of the six justices who signed the *Bruen* majority wrote separately to underscore the continued validity of this aspect of *Heller*. *See Bruen*, 142 S. Ct. at 2161 (Kavanaugh, J., concurring in an opinion joined by Roberts, C.J.) (quoting *Heller* for the proposition that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill" (cleaned up)); *id.* at 2157 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald* [ ] about restrictions that may be imposed on the possession or carrying of guns."). While we don't presume to know the minds of Supreme Court justices, we'd be hard-pressed to believe that these three justices would have joined an opinion that abrogated a proposition they wrote separately to underscore. Indeed, far from overruling or abrogating any part of *Heller*, the majority opinion in *Bruen* expressly—and without exception—declared that it was simply "ma[king] the constitutional standard endorsed in *Heller* more explicit[.]" *Id.* at 2134. And, given that three justices dissented from *Bruen*'s invalidation of a New York law that severely restricted the gun-possession rights of *even* law-abiding citizens, we think it fair to say that *at least* six of the Court's nine justices would support the continued constitutionality of § 922(g)(1).[4]

---

[4] Two additional points on this. *First*, we recognize that one of those dissenting votes was cast by Justice Breyer, who's no longer on the Court. But we've seen nothing from his replacement—Justice Jackson—to suggest that she would take a different approach to this question. *Second*, we say "at least" six because Justice Thomas, writing for the majority in *Bruen*, signaled an openness to the feedback-effect theory of the Fourteenth Amendment. *See Bruen*, 142 S. Ct. at 2138 ("We also acknowledge that there is an ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope (as well as the scope of the right against the Federal Government). . . . We need not

4

And that's probably why *every federal judge* who has considered this question since *Bruen* has upheld the continued validity of § 922(g)(1). *See United States v. Robinson-Davis*, 2023 WL 2495805, at *2 (W.D. Va. Mar. 14, 2023); *United States v. Rice*, 2023 WL 2560836, at *5 (N.D. Ind. Mar. 17, 2023); *Leonard v. United States*, 2023 WL 2456042, at *10 (S.D. Fla. Mar. 10, 2023) (Ruiz, J.); *United States v. Barnes*, 2023 WL 2268129, at *1 (S.D.N.Y. Feb. 28, 2023); *United States v. Beard*, 2023 WL 2249986, at *1 (S.D. Tex. Feb. 27, 2023); *United States v. Johnson*, 2023 WL 2308792 (S.D. Fla. Feb. 20, 2023) (Torres, Mag. J.), *report and recommendation adopted*, 2023 WL 2302253 (S.D. Fla. Feb. 28, 2023) (Gayles, J.); *United States v. Jackson*, 2023 WL 1967199, at *5 (W.D. Wash. Feb. 13, 2023); Order Denying Motion to Dismiss, *United States v. Olson*, No. 22-CR-20525, ECF No. 33 at 1 (S.D. Fla. Jan. 5, 2023) (Altonaga, C.J.); *United States v. Williams*, 2022 WL 17852517, at *2 (N.D. Ga. Dec. 22, 2022); *United States v. Hunter*, 2022 WL 17640254, at *1 (N.D. Ala. Dec. 13, 2022); *United States v. Spencer*, 2022 WL 17585782, at *4 (E.D. Va. Dec. 12, 2022); *United States v. Mitchell*, 2022 WL 17492259, at *1 (S.D. Ala. Nov. 17, 2022); *United States v. Young*, 2022 WL 16829260, at *11 (W.D. Pa. Nov. 7, 2022); *United States v. Minter*, 2022 WL 10662252, at *4 (M.D. Pa. Oct. 18, 2022); *United States v. Raheem*, 2022 WL 10177684, at *3 (W.D. Ky. Oct. 17, 2022); *United States v. Price*, 2022 WL 6968457, at *9 (S.D. W. Va. Oct. 12, 2022);

---

address this issue today because, as we explain below, the public understanding of the right to keep and bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public carry."). Under this theory, "[w]hen the people adopted the Fourteenth Amendment into existence, they readopted the original Bill of Rights, and did so in a manner that invested those original 1791 texts with new 1868 meanings." Kurt Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation*, BRIGHAM YOUNG UNIV. L. REV. (Jan. 15, 2021), https://ssrn.com/abstract=3766917; *see also* AKHIL REED AMAR, THE BILL OF RIGHTS 243 (1998) ("But if various jury-restricting doctrines are indeed products of the interaction between the First and Fourteenth Amendments, how to justify the Court's application of these doctrines in pure First Amendment cases involving only the federal government? Can it be argued that the Fourteenth Amendment has a doctrinal 'feedback effect' against the federal government, despite the amendment's clear textual limitation to state action? Yes, it can."). This *might* be significant because, if we're applying the Second Amendment right as it was understood in 1868, there *may* be more support, under the second *Bruen* factor, for the Government's view of a "historical tradition" of wholesale felon disarmament. Like the *Bruen* majority, though, we won't purport to offer a view on these important questions.

*United States v. King*, 2022 WL 5240928, at *5 (S.D.N.Y. Oct. 6, 2022); *United States v. Daniels*, 2022 WL 5027574, at *4 (W.D.N.C. Oct. 4, 2022); *United States v. Siddoway*, 2022 WL 4482739, at *2 (D. Idaho Sept. 27, 2022); *United States v. Cockerham*, 2022 WL 4229314, at *2 (S.D. Miss. Sept. 13, 2022); *United States v. Jackson*, 2022 WL 4226229, at *3 (D. Minn. Sept. 13, 2022); *United States v. Burrell*, 2022 WL 4096865, at *3 (E.D. Mich. Sept. 7, 2022); *United States v. Ingram*, 2022 WL 3691350, at *3 (D.S.C. Aug. 25, 2022); *United States v. Villalobos*, 2023 WL 3044770, at *6 (D. Idaho Apr. 21, 2023); *United States v. Trinidad*, 2022 WL 10067519, at *3 (D.P.R. Oct. 17, 2022); *United States v. Young*, 2022 WL 16829260, at *11 (W.D. Pa. Nov. 7, 2022); *United States v. Riley*, 2022 WL 7610264, at *10, *13 (E.D. Va. Oct. 13, 2022); Order Denying Motion to Dismiss, *United States v. Hester*, Case No. 22-cr-20333, ECF No. 39 at 1 (S.D. Fla. Jan. 26, 2023) (Scola, J.); Report and Recommendation, *United States v. Pierre*, Case No. 22-cr-20321, ECF No. 53 at 19 (S.D. Fla. Nov. 28, 2022) (Becerra, Mag. J.); *United States v. Ridgeway*, 2022 WL 10198823, at *2 (S.D. Cal. Oct. 17, 2022); *United States v. Carrero*, 2022 WL 9348792, at *3 (D. Utah Oct. 14, 2022); *United States v. Charles*, 2022 WL 4913900, at *11 (W.D. Tex. Oct. 3, 2022); *United States v. Collette*, 2022 WL 4476790, at *8 (W.D. Tex. Sept. 25, 2022); *United States v. Coombes*, 2022 WL 4367056, at *8, *11 (N.D. Okla. Sept. 21, 2022); *United States v. Hill*, 2022 WL 4361917, at *3 (S.D. Cal. Sept. 20, 2022).

We therefore agree with the Chief Judge of the Northern District of Indiana who, in a recent decision on this issue, made the point succinctly:

> [The defendant's] position requires the Court to find that every other circuit and district court which has considered [*Heller*'s] language and concluded it is relevant to interpreting the scope of the Second Amendment, to have been wrong. The Court finds the possibility of such a systemic misapprehension to be unlikely. The Court finds this to be unlikely because of how many courts have concluded that these passages [from *Heller*] help define the scope of the Second Amendment and, conversely, because [the defendant] has not cited to a single legal authority which shares his view. In fact, as the Government notes in their response, § 922(g)(1) has been uniformly upheld by federal courts when challenged on the basis of *Bruen*. Therefore, the Court cannot agree with [the defendant] that the passages of *Heller* describing the prohibition on felons possessing firearms as longstanding and presumptively lawful should be disregarded.

6

> The Court is also unpersuaded by [the defendant's] contention that the *Bruen* framework in some way vacated or superseded *Heller*. In addition to the previously discussed reasons, this interpretation is contrary to the explicit language of *Bruen* which stated the decision was "in keeping with *Heller*." Moreover, *Bruen* expressly reaffirmed the analytical method deployed by *Heller* and used it to resolve the challenge to the New York statute at issue. While *Bruen* certainly built upon *Heller* and provided further direction to the circuit courts on how to analyze Second Amendment challenges, the conclusion that *Bruen* superseded *Heller* is a step too far.

*Rice*, 2023 WL 2560836, at *5.[5]

\*\*\*

After careful review, then, we hereby **ORDER AND ADJUDGE** that the Motion to Dismiss [ECF No. 10] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on May 8, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[5] Since neither *Heller* nor *McDonald* distinguished between dangerous and non-dangerous felons, our reasoning here disposes of Meyer's facial and as-applied challenges together.